Good morning, your honors. In this case, it's the defense position that there is not sufficient evidence that there's an agreement to accomplish a legal objective for purposes of the conspiracy statute. Now, the cases lay out a lot of different factors that you can look at to decide whether or not there's adequate evidence of a conspiracy, and I'd like to highlight those and touch on the facts relevant to that, but show that there isn't sufficient evidence. One of the factors is the length of the relationship between the parties. Here, well, the government's position is that there was a conspiracy to distribute methamphetamine between Washington and Alaska with Hueso and TW. Now, the Alaska transactions only occurred over a January-February time period in 2008, and Mr. Hueso acted as a seller to TW. Now, prior to the Alaska transaction, TW testified that there were transactions that occurred in Alaska and that Hueso supplied her with the drugs. Prior to that, TW testified that Hueso supplied her with drugs in Washington. He supplied her with drugs in Washington in 2007, and during that time period, there's no claim of a conspiracy, but the basic relationship was the same. Hueso fronted drugs to TW. I'm not going to dispute that. The government puts a lot of weight on the fact that drugs were fronted to TW, and that's a strong evidence of conspiracy, but here, even before the Alaska transactions, sometimes he required cash. A lot of times, he did allow her to front the drugs. That's just the way he did business with her. Well, that may be just the way he did business, but our cases do say that when he has a stake in it, as exemplified by fronting, that is a valid factor to consider. I think it is a valid factor, but here, the factor is minimized because that's how he got paid. I mean, he still needed to get paid. Counsel, I understand that's how he got paid, but that's how the drug dealers in the other cases got paid, so what else do we look to? The idea is that he's got a stake in the outcome, right? He needs the deal to go forward to be distributed for him to get his money back. Well, even if she doesn't sell the drugs, she still owes him the money back. Is that part of the conspiracy? I mean, the whole financial web and arrangement? Well, the problem here is that if all you have to do is front drugs, then, I mean, if people don't have the cash, I mean, addicts run out of money and they want to get drugs by having them fronted, then you're going to have a conspiracy all the time, and I don't think it's that easy. Here, we know that she was a user of the drugs. She even used the drugs that they were distributing to Alaska, portions of those. Counsel, are you saying that fronting the drugs is irrelevant, or are you just saying that it's not solely controlling? I'm not saying it's irrelevant. Oh, it's relevant. Okay, so it's relevant. Now, also, is there evidence that Mr. Hueso gave her advice about how to deal with the purchasers of the drugs? Is yes or no? I wouldn't call it advice, Your Honor. There were discussions, and the cases say discussions are not enough. There is evidence in the record that he told her she should not be taken advantage of by these people. And what does that mean, don't be taken advantage of? What was the closest you can recall to the actual testimony? The closest I can recall, and the government probably might have this quoted better than myself, is that he told her she shouldn't let people take advantage of her. Did he tell her that she should get the money before she gives them the drugs? I think he may have told her that, but that's just common sense. Well, it may be just common sense, but is it relevant? Again, not controlling, but is it a fact that's relevant? I would agree. I mean, there's a lot of facts in the case that are relevant. There's a lot of factors at play. Also, did he buy her a ticket, or buy her spouse a ticket? That is disputed. The record indicates that she used mileage for that first ticket. Even if it's disputed, is there some evidence from which the court could find that he did? Well, her uncorroborated testimony, she did testify that he paid for that ticket. But she wasn't sure how much he paid, and she finally admitted that he used mileage. Now, if the standard is clear, clear error is not the standard. If these and other points are in the record, how can we say the decision was a clear error? Well, I think one of the most problematic issues in the case for the government is that she never, PW never paid the waste money profits. She never intended to pay him. She testified she never paid him all the money that he was owed. And there's significant evidence that she controlled what was happening in Alaska. It's a difficult case. I'm not going to dispute it. It's a fact-sensitive case. Thank you. Thank you for your candor. No, it helps, and it does have a lot of close issues in it, as you've recognized. And I would like to reserve the rest of my time for rebuttal. You may. May it please the Court, Madam Clerk, Counsel, my name is Andrea Steward, and I represent the United States in this matter. There are three issues that were raised on appeal. The primary one just discussed was sufficiency of the evidence, specifically on whether there was an agreement to further distribute methamphetamine. In this case, the defense did request a jury instruction consistent with their theory that there was simply a buyer-seller relationship. That instruction is at Supplemental Excerpt of Record 227. The instruction was given as requested by defense, and the jury properly found on the evidence the defendant is guilty of an agreement, a conspiracy to distribute methamphetamine in Alaska. The agreement in this case went for- So you're basically saying that the jury instruction ruled out the jury from relying solely on the fronting aspect of it? Or are you just saying- because the argument that counsel's making is that there's no evidence beyond a buyer-seller arrangement where the seller, in this case, essentially used a form of credit transaction, and you heard the point, which is if fronting alone were enough, then virtually any credit deal would be a conspiracy to distribute. So what does the jury instruction have to do with that, if it does? And secondly, what beyond fronting, if there is anything, would you cite as evidence of the conspiracy? I would say that the jury instruction on the buyer-seller relationship incorporated the arguments that had been made, and the jury rejected that by their verdict. I think the defense cites in their brief, United States v. Rivera, a Seventh Circuit case for additional factors outside of just fronting, and I think this case fits all of them. Counsel started off discussing the length of the relationship, which is one of the Rivera factors. This relationship went on for approximately two years. They met, Tova Weiss and Mr. Hueso met in 2006 through a friend who, Hueso was supplying, her friend Maria. That's at Supplemental Excerpt of Record 7. After knowing each other for a year through Maria, who Hueso was supplying, Hueso called up Tova, so he recruited Tova. That's at Supplemental Excerpt of Record 8. He recruited Tova and said, I'm no longer dealing with Maria. Do you want to start buying from me? Initially, she bought an ounce at a time. That's at Supplemental Excerpt of Record 10. After just a couple of transactions, Hueso would front the drugs to Tova so that she could distribute them further, collect the money, feed her habit, and then pay him back. That's at Supplemental Excerpt of Record 11. That went on for several months prior to the trips to Alaska. The trips to Alaska were discussed between Hueso and Weiss as a way to make additional money. They could sell the drugs for almost twice what they were making them in Seattle. She first went in January of 2008. At that trip, she was just checking it out and seeing what was going on. She wasn't actually selling drugs on that trip. She made three more trips following that between January and March of 2008 in which Mr. Hueso provided her the drugs that she then sold. The arrangement was he fronted the drugs to her, four to six ounces each time. When she returned, she was supposed to pay him. Counsel is correct that Ms. Weiss was not good at collecting money and that Mr. Hueso did, in fact, give her direction that he should be better at collecting it and how to collect it, and that is at Supplemental Excerpt of Record 26 and 29. He did pay for her plane ticket on that first trip. This is beyond fronting. This is as the judge found when he made his finding on leadership, the leadership role at Supplemental Excerpts of Record 207, 208, and 209. The judge found that he had sat through the testimony, had a very, very, very thorough cross, and he found the leadership role appropriate. And he found specifically that Tova Weiss was pathetic, a drug addict, a tumbleweed, and that Hueso controlled, advised, instructed, and financed her. And that finding was after he sat through a trial on these issues. So it goes beyond fronting. And it's true that Ms. Weiss wasn't great about collecting money, and by the time of the transaction in May when they were both arrested with the 10 ounces of methamphetamine, she owed him approximately $15,000. And so for that transaction, almost the entire amount was going to, and that's at Supplemental Excerpt of Record 36. By the time the May transaction came, he had almost sole financial stake in that transaction. She actually wanted to back out of it. She was going to skip the deal because it was stressing her out so much. That's at Supplemental Excerpt of Record 55 and 56. But he talked her into it because he wanted to get paid since she owed him about $15,000, and that was about the amount of this transaction. So in one transaction, he was going to have his debt with her wiped clean. So his stake in that transaction was huge. Another factor in Rivera is trust. And Supplemental Excerpt of Record 124, Tova specifically said Ramon trusted her. And that's obvious from the fact that he would allow her to run up that amount of debt. The fact that they split the transaction into two parts on May wasn't because he didn't trust her. It was because he didn't trust the fellow that she was selling to. You know, you invoked the jury instruction. I know nobody's challenged it specifically in this case, but I was curious that now you're spending a lot of time on Rivera. And that was invoked, as I recall, during the discussions of the jury instruction, and the judge wound up looking to an unpublished memorandum decision of this circuit, the case Cash Case, which is a very long narrative mem dispo. And I'm just wondering, is there any problem in our circuit with having appropriate clarity and the jury instruction in these kinds of cases? Where you're resorting to an unpublished mem dispo? Well, as I – and I'm sorry, I didn't focus on this because it wasn't raised on appeal. I know it wasn't, but that's why I'm raising it now. It just occurred to me as I was reading this over is that, you know, here the judge is relying on what we call a non-precedential decision. Right, and he modified it at the request of defense counsel. I know he did. So the defense got the – with less factors than what I had. So my question is really an institutional question for both of you. Is the prosecutorial and defense bar content with our precedent on this issue in terms of forming jury instructions? It wasn't raised, so I'm assuming that it's not a problem. But if it is, it would be helpful to know that. I would have been happy to stick with the jury instruction on conspiracy and not have the instruction on buyer celebration, but I think it adds an extra level of protection for the defendant to have that as a jury instruction. I think it's not inappropriate, but it's an extra prophylactic for the defense. Thank you. If that answers your question. It does, thank you. I think similarly with venue and jury instruction was provided at supplemental excerpt of Record 226. The jury instruction has not been challenged here, and the jury appropriately found that overt acts of this conspiracy occurred in Alaska. And as I said, the judge properly made findings regarding Mr. Wazer's role as a leader in this conspiracy, and the 3B1.1 factors are all met similarly with his finding that Wazer controlled, advised, instructed, and financed. I did file a 28J letter indicating that the Seventh Circuit case, United States v. Brown, that the counsel relied on, was further clarified in a later case in Howell, where the Seventh Circuit clarified that control is not the sole factor. The central concern is relative responsibility. Finally, the 851 notice in this case, the judge made the appropriate findings at supplemental excerpt of Record 209. He found that the notice was adequate, accurate, followed the rules, and it's absolutely clear that the defendant had a prior drug-related felony. And so I think his finding is well supported by the record. Thank you. Thank you. Thank you. I think one of the significant issues that the government's overlooking here is that Hueso was a source of drugs for TW, and she had another source of drugs for her Alaska transactions as well, TM. And there's testimony that that seller fronted her drugs, and she wanted to use that seller for the transaction in May 2008, but he wasn't available, so she contacted Hueso. Now, I mean, here we have a situation where we have a user who's distributing drugs, and she's using them. She's not keeping track of how much money she's making. She doesn't know how much money she owes people. She doesn't know how much money she gets paid. There's just not enough here to have a joint enterprise. I mean, this isn't an enterprise that's happening. This is a loosey-goosey buyer-seller relationship where TW is calling a lot of the shots. She was contacted by someone in Alaska to deal drugs in Alaska. No one contacted Hueso. Hueso, there's no evidence Hueso knows anyone in Alaska or her other seller, TM, so there's no conspiracy between Hueso and TM. That's never been alleged. She paid for her costs for Alaska, with the exception she did testify that he paid for one ticket, but the record, you know, it's my position that evidence isn't sufficient. Now, a lot of these factors play into whether there was a leadership role, and I'll defer to my briefing for that unless the court has any questions about that. But the case is unusual because there's a lot of factors at play here, and there are definitely some factors that favor the government's position, but when we look at them all together, there just doesn't seem to be a business situation or a joint enterprise going on here. If this was, you know, a contract, I mean, we don't use contract law purely because this isn't a legal contract, but, you know, you have to have an offer, acceptance, intent to be bound. It appears TW didn't intend to be bound because she didn't intend to pay Hueso. She testified that. Intent in contract doesn't count. It does in Alaska, but I guess we have a little special law. But the court asked a question procedurally about the jury instruction. I think the defendant basically got the jury instruction they had inquired of, and if the trial court wants to look at the restatement on published opinions, I think they can do that. I'm not saying that they can't. I'm just curious that they were and that it was. Yeah, and I actually didn't use the cash case a lot, and I could have used that more, but I didn't because it wasn't on the published opinion, so I didn't rely on it heavily. Unless the panel has any questions for me, I would just reassert my arguments in my briefing, and I think this is a close call, but there is not sufficient evidence of conspiracy here. If it's that easy to get a conspiracy, then the government's web will get even larger than it already is, and they can capture it. I know one of the cases says they capture a lot of fish with a conspiracy statute, and this is one of those situations. Thank you. Thank you. Case just argued, United States v. Hueso is submitted.
judges: McKeown, Fisher, Gould